UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONAL RAILROAD PASSENGER
CORPORATION d/b/a AMTRAK,

          Plaintiff,

                                      Civil Case No. 20-10177
v.                                Honorable Linda V. Parker

OLD REPUBLIC INSURANCE COMPANY
and MICHIGAN MUNICIPAL LEAGUE
LIABILITY AND PROPERTY POOL,

          Defendants.
_____/

## **OPINION AND ORDER**

This is an action for no-fault insurance benefits for damages arising when a passenger train operated by Plaintiff National Railroad Passenger Corporation, doing business as Amtrak (hereafter "Amtrak") collided with a tractor-trailer on a railroad crossing in the Village of Three Oaks ("Village"). In its initial Complaint, filed January 23, 2020, Amtrak named Old Republic Insurance Company ("Old Republic") and another insurer—which has since been dismissed—as Defendants. On August 30, 2020, Old Republic filed a Notice of Non-Party Fault identifying Michigan Municipal League Liability and Property Pool ("League") as the insurer of two Village snowplows that may have been involved in the accident.

The matter is presently before the Court on the League's Motion to Dismiss and/or for Summary Judgment (ECF No. 39) and Old Republic's Motion for Partial Summary Judgment (ECF No. 44). Amtrak has responded to both motions. (ECF Nos. 40, 47.) Old Republic filed a brief opposing the League's motion. (ECF No. 41) The League concurs in Old Republic's motion.[1] (ECF No. 45.) Finding the facts and legal arguments sufficiently presented in the parties' briefs, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

## I.     Standards of Review

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the

---

[1] Travelers Insurance Company also filed a response to Old Republic's motion in which it states that it concurs in the motion. (ECF No. 46.) It has since been dismissed without prejudice as a Defendant. (ECF No. 49.)

2

complaint as true.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  This presumption

is not applicable to legal conclusions, however.  *Iqbal*, 556 U.S. at 668.

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is

appropriate "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  The central inquiry is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 251-52 (1986).  After adequate time for discovery and upon motion, Rule 56

mandates summary judgment against a party who fails to establish the existence of

an element essential to that party's case and on which that party bears the burden

of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## II.    Factual and Procedural Background

On January 25, 2019, Old Republic insured a tractor-trailer driven by Sergio

Trejo Herrera.  (Am. Compl. ¶ 11, ECF No. 30 at Pg ID 152.)  On that date,

Herrera drove the tractor-trailer from a side street onto southbound Elm Street in

the Village and began crossing Amtrak's railroad tracks, which run perpendicular

to Elm Street.  (Hilmer Aff. ¶ 3, ECF No. 39-6 at Pg ID 265.)  As he crossed the

tracks, Herrera was in the northbound lane of Elm Street and the tractor-trailer

somehow became stuck between the railroad crossing arm gates and was hit by an

3

oncoming Amtrak passenger train. (*Id.* ¶¶ 4-6, Pg ID 265; Am. Compl. ¶¶ 12, 13, ECF No. 30 at Pg ID 152.) It does not appear that Herrera was injured in the accident. (*See* Police Report at 2, ECF No. 39-5 at Pg ID 261.)

Amtrak alleges that the accident may have involved two Village snowplows. (Am. Compl. ¶ 12, ECF No. 30 at Pg ID 152-53.) The police report includes a statement from Herrera that he drove into the northbound lane of Elm Street because the snowplows were in front and on each side of him. (Police Report, ECF No. 39-5 at Pg ID 258, 261.) Village employee Clay Ackerman was salting sidewalks outside of a business on Elm Street when the accident occurred. (Ackerman Aff. ¶ 2, ECF NO. 39-7 at Pg ID 268.) Ackerman was operating a salt spreader on the driver's side of a Village dump truck (presumably one of the "snowplows"), which was parked northbound in the parking lane on Elm Street. (*Id.* ¶¶ 3, 4, Pg ID 268.) Ackerman claims the dump truck was parked before Herrera's tractor-trailer was "present" and was not blocking any portion of the southbound lane of Elm Street. (*Id.* ¶¶ 5, 8, Pg ID 268.)

Village employee Nate Smith was driving northbound on Elm Street after plowing a parking lot south of the railroad tracks when he saw Herrera's tractor-trailer on the railroad crossing. (Smith Aff. ¶¶ 2, 3, ECF No. 39-8 at Pg ID 271.) Witness Charles Hilmer was waiting at the railroad crossing when he saw Herrera attempt to cross the railroad tracks. (Hilmer Aff. ¶¶ 1-6, ECF No. 39-6 at Pg ID

4

265.)  Hilmer states that there were no other vehicles in or on the railroad trucks

when Herrera turned the tractor-trailer onto the railroad crossing.  (*Id*. ¶ 7, Pg ID

265.)

   Amtrak's locomotive and passenger cars and the railroad crossing were

damaged in the accident.  (Am. Compl. ¶ 29, ECF No. 30 at Pg ID 156; Itemization

of Damages, ECF No. 44 at Pg ID 360.)  Amtrak obtained an appraisal for the cost

of repairing the locomotive, which lists the cost as $125,291.37 (including a

$2,400 appraisal fee).  (Itemization of Damages, ECF No. 44 at Pg ID 360.)

Amtrak paid $8,679.31 to repair the railroad crossing.  (*Id.*)  Amtrak claims other

damages arising from the accident, including: (i) loss of use of the locomotive

($24,425.24); (ii) passenger inconvenience[2] ($18,500.20); (iii) work broadcast

structure[3] ($22,545.19); and (iv) accident scene employee costs/train delay –

service interruption[4] ($94,380.00).  (*Id.*)

---

[2] This claimed amount is comprised of transportation certificates and refunds for
five trains presumably impacted by accident.  (Amtrak Revised Prelim. Demand
Ltr., ECF No. 44 at Pg ID 362.)

[3] This claimed amount is comprised of general and administrative costs, alternative
transportation, and a hotel room.  (Amtrak Revised Prelim. Demand Ltr., ECF No.
44 at Pg ID 362.)

[4] This claimed amount includes the costs associated with the delay or cancellation
of trains due to the accident, as well as additional on-board employee hourly wages
at the accident scene, additional locomotive fuel consumption, shuttle and relief
crew setbacks at interchange points, revenue loss and passenger onward

Carmelo Graziano, the train engineer, suffered injuries in the collision (Am.
Compl. ¶ 15, ECF No. 30 at Pg ID 153), as did Pierre Whittaker, the Leave Service
Attendant on the train (*id*. ¶¶ 20, 21, Pg ID 153-54). Graziano and Whittaker
presented Amtrak with pre-litigation claims for medical expenses and lost wages
under the Federal Employer's Liability Act ("FELA"). (*Id.* ¶¶ 16, 22, Pg ID 153-
54.) Amtrak paid medical expenses and lost wages for Graziano and Whittaker, as
well as two additional employees, totaling $132,427.06. (Itemization of Damages,
ECF No. 44 at Pg ID 360, 372.)

As indicated, Amtrak initiated this action on January 23, 2020, seeking
property protection insurance benefits and personal injury protection ("PIP")
benefits under Michigan's Motor Vehicle, Personal and Property Protection Act,
commonly referred to as the "No Fault Act." On April 10, 2020, the Court issued a
scheduling order setting *inter alia* a November 20, 2020 deadline for discovery.
(ECF No. 18.) On August 3, 2020, Old Republic filed a Notice of Non-Party Fault
identifying the League due to the snowplows' involvement in the accident. (ECF
No. 28.) In a Second Amended Complaint filed three days later, Amtrak added the
League as a Defendant. (ECF No. 30.) The League filed its dispositive motion in
lieu of an answer to the complaint.

---

transportation at end points. (Amtrak Revised Prelim. Demand Ltr., ECF No. 44 at
Pg ID 362.)

6

III.    **The League's Motion**

In its Motion to Dismiss and/or for Summary Judgment, the League contends that Amtrak's claims for no fault benefits are time-barred under the applicable statute of limitations.  Alternatively, the League maintains that there is no genuine issue of material fact that no vehicle insured by the League—i.e., no Village vehicles—was involved in the accident.

A.    **Statute of Limitations**

The No Fault Act contains the following applicable statute of limitations provisions:

> (1) An action for recovery of personal protection insurance benefits . . . may not be commenced later than 1 year after the date of the accident that caused the injury unless written notice of injury as provided in subsection (4) has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury.

> (2) Subject to subsection (3), if the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss, or survivor's loss has been incurred. However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced.

> * * *

> (5) An action for recovery of property protection insurance benefits may not be commenced later than 1 year after the accident.

7

Mich. Comp. Laws § 500.3145.  While Amtrak's January 23, 2020 initiation of

this lawsuit was within one-year of the January 25, 2019 accident, Amtrak did not

assert its claims against the League until August 5, 2020.  The League therefore

maintains that those claims are time-barred.  Amtrak argues that its claims against

the League are timely due to Michigan Compiled Laws Section 600.2957.

Section 600.2957 reads, in relevant part:

> 1) In an action based on tort or another legal theory seeking
> damages for personal injury, property damage, or wrongful
> death, the liability of each person shall be allocated under this
> section by the trier of fact and, subject to section [600.]6304, in
> direct proportion to the person's percentage of fault.  In
> assessing percentages of fault under this subsection, the trier of
> fact shall consider the fault of each person, regardless of
> whether the person is, or could have been, named as a party to
> the action.
>
> (2) Upon motion of a party within 91 days after identification of
> a nonparty, the court shall grant leave to the moving party to
> file and serve an amended pleading alleging 1 or more causes of
> action against that nonparty. A cause of action added under this
> subsection is not barred by a period of limitation unless the
> cause of action would have been barred by a period of
> limitation at the time of the filing of the original action.

Mich. Comp. Laws § 600.2957 (footnote omitted).  Amtrak filed this lawsuit

within one year of the accident and its claims against the League were added in an

amended pleading filed within 91 days of Old Republic's Notice of Non-Party

8

Fault.  Therefore, Amtrak maintains, its claims against the League are not time-barred.

Not so, the League argues, because a claim for no fault benefits is not a tort claim.  But even if the first clause of section 600.2957(1) applies to the tolling provision in subsection (2) of the statute, the plain language does not speak to only tort actions but also to actions "based on . . . another legal theory seeking damages for personal injury, property damage, or wrongful death[.]"  Mich. Comp. Laws § 600.2957(1).  Amtrak is seeking damages for personal injury and property damage from the League.  Nevertheless, the League further argues, no fault claims cannot be tolled.  The only case the League cites, however, holds only that there is no "*judicial* tolling" in no fault cases.  *Secura Ins. Co. v. Auto-Owners Ins. Co.*, 605 N.W.2d 308, 310 (Mich. 2000) (emphasis added).  Amtrak is relying on a statute to toll its claims against the League.[5]

The Court concludes that because Amtrak (i) filed this action seeking damages arising from the January 25, 2019 accident before the one-year limitations period in section 500.3145 expired and (ii) amended its complaint to add the League as a Defendant less than 91 days after the League was identified as a

---

[5] Moreover, to state that the No Fault Act is not subject to tolling, period, is contrary to the express terms of its statute of limitations which provides for tolling for PIP benefits where notice has been given or a payment has been made within a year of the subject accident.  *See* Mich. Comp. Laws § 500.3145(1).

9

nonparty at fault, Amtrak's claims against the League for PIP and property protection insurance benefits are not time-barred.  To hold otherwise would allow an entity not immediately identified as an insurer of an involved motor vehicle to evade liability if its role is discovered more than a year after the subject accident.

Finally, the one-year back rule in section 500.3145(2) is not applicable here, where the action was filed less than a year after the subject accident.  The plain language of the statute reflects that the rule applies only where the action is filed more than one year after the subject accident, but notice was given or payment was made before the one-year period expired.

### B.    Involvement of Motor Vehicles Insured by the League

The No Fault Act requires an insurer to pay benefits for accidental injury to tangible property and accidental bodily injury "arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle" subject to certain provisions of the statute.  Mich. Comp. Laws § 500.3105, .3121.  The Act also provides the order of priority for those suffering property damage:  "A person suffering accidental property damage shall claim property protection insurance benefits from insurers in the following order of priority: insurers of owners or registrants of vehicles *involved in* the accident; and insurers of operators of vehicles *involved in* the accident."  *Id*. § 500.3125 (emphasis added).  "A vehicle may be 'involved in the accident' even though the damage cannot be said to have

10

arisen out of the ownership, operation, maintenance, or use of *that* vehicle."

*Turner v. Auto Club Ins. Ass'n*, 528 N.W.2d 681, 687 (Mich. 1995) (emphasis in

original).  For a vehicle to be "involved in the accident," however, it must have

been operated or used as a motor vehicle and "actively, as opposed to passively,

contribute to the accident."  *Id*. at 689.

According to the League, there is no genuine issue of material fact that the

Village snowplows were not involved in the accident.  The League maintains that

eyewitness statements reflect that the snowplows were not on the railroad crossing

or blocking Herrera's path of travel when he turned onto the tracks.  Instead, one

snowplow was parked in the parking lane on Elm Street, not blocking the

southbound lane; and, the other snowplow was south of the railroad crossing, not

within thirty yards of the truck or the crossing.  Parked vehicles, the League

asserts, are not "involved" in motor vehicle accidents.  (Reply Br. at 3, ECF No. 42

at Pg ID 335 (citing *Heard v. State Farm Mut. Auto. Ins. Co.*, 324 N.W.2d 1 (Mich.

1982).)

Old Republic argues that there is a genuine issue of material fact with

respect to the snowplows' involvement in the accident based on Herrera's

statement in the police report that he moved into the northbound lane due to the

snowplows on each side of him.  While the insurer of a parked vehicle is not

subject to liability for no-fault benefits, *Heard*, 324 N.W.2d at 5, the No Fault Act

11

provides exceptions for when liability may arise, including when "[t]he vehicle was parked in a way as to cause unreasonable risk of the bodily injury which occurred," Mich. Comp. Laws § 500.3106(1)(a).  However, aside from the police report, there is no evidence suggesting that either snowplow was parked in a way to "cause unreasonable risk of the bodily injury which occurred."  Statements within a police report (except to the extent they incorporate firsthand observations of the officer) constitute inadmissible hearsay unless they fall within an exception to the hearsay rule, *see Miller v. Field*, 35 F.3d 1088, 1091 (6th Cir. 1994), and Herrera's statements do not fall within any such exception.  Hearsay evidence cannot be considered on a motion for summary judgment.  *Smoot v. United Transp. Union*, 246 F.3d 633, 649 (6th Cir. 2001) (quoting *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) ("It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.")).

Nevertheless, Old Republic also maintains that summary judgment is improper because the League filed its motion in lieu of an answer and there has been no opportunity to seek discovery on this issue or to question the snowplow drivers regarding their affidavits.  (Resp. at 9, ECF No. 41 at Pg ID 328.) "Generally, to preserve an argument that additional discovery is needed [to respond to a summary judgment motion], a party must file a motion and an affidavit or declaration under Federal Rule of Civil Procedure 56(d) that describes

12

its 'need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information.'" *Patterson v. Outback Steakhouse of Florida, LLC*, No. 17-5035, 2017 WL 9604534, at *1 (6th Cir. 2017) (quoting *Unan v. Lyon*, 853 F.3d 279, 292-93 (6th Cir. 2017)) (additional citations omitted). As the League points out, Old Republic neglected to file a Rule 56(d) affidavit. (Reply at 5, ECF No. 42 at Pg ID 337.)  Nevertheless, the Sixth Circuit has held that "a formal affidavit may not be required 'when a party has clearly explained its need for more discovery on a particular topic to the district court prior to or contemporaneously with the motion for summary judgment.'" *Patterson*, 2017 WL 9604534, at *1 (quoting *Unan*, 853 F.3d at 293) (quoting *United States v. Rohner*, 634 F. App'x 495, 504 (6th Cir. 2015)); *see also Rohner*, 634 F. App'x at 504 (citing *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619-627-28 (6th Cir. 2002)) ("[T]o avoid 'unduly exalt[ing] form over substance,' this circuit has not required a formal affidavit when a party has clearly explained its need for more discovery on a particular topic to the district court prior to or contemporaneously with the motion for summary judgment.").

Thus, despite Old Republic's failure to comply with Rule 56(d), it has explained its need for more discovery on the issue of the snowplows' possible "involvement" in the subject accident.  For that reason, before such discovery is

obtained. the Court declines to rule on whether a genuine issue of material fact exists on that issue.

## IV.   Old Republic's Motion

Old Republic seeks partial summary judgment with respect to some of the damages claimed by Amtrak.

### A.   Physical Damage to Amtrak's Locomotive

As indicated previously, the No Fault Act provides for the payment of benefits for accidental damage to tangible property:

> (1) Under property protection insurance an insurer is liable to pay benefits for accidental damage to tangible property arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle . . .
>
> * * *
>
> (5) Property protection insurance benefits consist of the lesser of reasonable repair costs or replacement costs less depreciation and, if applicable, the value of loss of use. . . .

Mich. Comp. Laws § 500.3121.  The plaintiff bears the burden of proving damages with reasonable certainty.  *Health Call of Detroit v. Atrium Home & Health Servs., Inc.*, 706 N.W.2d 843, 852 (Mich. Ct. App. 2005) (citations omitted).  Old Republic argues that Amtrak fails to prove the damages to its locomotive with reasonable certainty because it provides only an appraisal of the cost to repair the locomotive rather than documentation of the actual cost of repair, such as Amtrak

14

provided for the repair of the railroad crossing.  Old Republic maintains that the ordinary and commonly understood meaning of "reasonable repair costs" is the actual cost of repair and that Amtrak's actual costs to repair the locomotive would be the best evidence of damages.

Old Republic, however, does not cite a single case interpreting the No Fault Act's damages requirement this way.  The only case Old Republic notes is an unpublished United States Tax Court decision interpreting "reasonable repair costs" in the context of tax return deductions, which is an undoubtedly distinguishable scenario.[6]  (*See* Mot. at 5 n.12, ECF No. 44 at Pg ID 352 (citing *Wuerth v. Comm'r of Internal Revenue*,  No. 28637-09S (T.C. Oct. 13, 2011)). Old Republic's interpretation of the No Fault Act's damages provision ignores additional language in *Health Call of Detroit*:  "Damages . . . are not speculative simply because they cannot be ascertained with mathematical precision.  . . . Although the result may only be an approximation, it is sufficient if a reasonable basis for computation exists."  706 N.W.2d at 852 (citing *Ensink v. Mecosta Cnty. Gen. Hosp.*, 687 N.W.2d 143, 148 (Mich. Ct. App. 2004)).  Further, an individual or entity should not be required to first repair damaged property to seek benefits

---

[6] One can understand why actual costs to repair are required for a taxpayer to claim a tax deduction on a return, as such deductions are only permissible because the repair costs have been incurred.  In comparison, an injured party may not have the means to repair damaged property without first recovering the cost to do so.

15

under the No Fault Act, as undoubtedly some individuals or entities will lack the means to do so before receiving the property protection insurance benefits due. Thus, the fact that Amtrak went ahead and expended $8,679.31 to repair the railroad crossing but not the $125,291.37 to repair the locomotive does not preclude it from seeking the latter from Old Republic.

### B.     Loss of Use Damages

As set forth above, property protection insurance benefits include "the value of loss of use."  Mich. Comp. Laws § 500.3121(5).  Old Republic points out that only one category in Amtrak's itemized list of damages is identified as a "loss of use charge" (i.e., a claim for $24,425.24).  The remaining non-repair damages (i.e., "Passenger Inconvenience", "Work Broadcast Structure", and "Accident Scene Employee Costs/Train Delay – Service Interruption), Old Republic argues, do not constitute "loss of use" and thus are not recoverable under the statute.

The No Fault Act does not define the term "loss of use."  The Michigan Court of Appeals, however, has construed the term to include business interruption losses, such as lost profits.  *Mich. Mut. Ins. Co. v. CAN Ins. Cos.*, 448 N.W.2d 854, 857-58 (1989); *JF Warran, LLC v. Mainstay Motors, Inc.*, No. 347762, 2020 WL 3475826, at *2 (Mich. Ct. App. June 25, 2020).  "[T]he theory behind the allowance of damages for loss of use is that it is not the actual use but the [r]ight to use that is compensable."  *Koninklijke Luchtvaart Maatschaapij, N.V. (K.L.M.*

16

*Royal Dutch Airlines) v. United Techs. Corp.*, 610 F.2d 1052, 1056 (2d Cir. 1979);

*Corporate Air Fleet of Tenn., Inc. v. Gates Learjet, Inc.*, 589 F. Supp. 1076, 1081

(M.D. Tenn. 1984) (citing 22 Am. Jur. 2d Damages § 152 (1965)).  In *Michigan*

*Mutual*, the court concluded that "[t]he Michigan Legislature's choice of the

phrase 'loss of use' without any express or limiting language evinces its intent to

utilize the term's generally accepted broad scope."  *Id*. at 858.

Old Republic categorizes Amtrak's damages for transportation certificates

and refunds to passengers on its trains as goodwill expenditures, which are not

compensable.  Old Republic argues that costs of alternative transportation, hotel

rooms, locomotive fuel, and wages paid to employees at the accident scene also are

not loss of use damages.  According to Old Republic, even if these damages

constitute lost profits, they have not been established with the requisite reasonable

certainty.

Amtrak maintains that these damages are directly related to the subject

accident and are the result of its damaged equipment being unusable and its

necessary efforts to bring that equipment back into operation.  Amtrak explains

that it "was forced to halt all trains utilizing [the tracks where the accident

occurred] until the area was repaired and determined safe for travel.  During that

time, train routes were delayed or cancelled, causing Amtrak to incur additional

losses."  (Resp. at 7, ECF No. 47 at Pg ID 438.)

17

At this juncture, these damages appear to constitute business interruption losses, which are recoverable if shown to a reasonable certainty.  They are losses Amtrak foreseeably incurred because its locomotive and/or the railroad crossing were unusable, thereby impacting trains dependent on the locomotive and/or scheduled to pass through the crossing and the passengers and employees who were supposed to be on those trains.  Old Republic's argument on the adequacy of Amtrak's proof is so cursory as to be waived.  *Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 441 (6th Cir. 2002) (observing that "perfunctory and undeveloped arguments" are waived); *Slater v. Potter*, 28 F. App'x 512, 513 (6th Cir. 2002) (citing *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)) (indicating that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

## C.      Medical Expenses Paid for Employees

In its First Amended Complaint, Amtrak seeks "reimbursement of no fault PIP benefits" from Old Republic for medical expenses and lost wages paid to Amtrak employees injured in the subject accident.  (Am. Compl. Counts II-III, ECF No. 22 at Pg ID 95-97.)  Old Republic argues that what Amtrak in fact is seeking is reimbursement of the payments Amtrak made to compromise the employees' FELA claims—payments which are not recoverable under the No

Fault Act.  Further, Old Republic argues, the No Fault Act does not grant Amtrak a statutory cause of action to pursue benefits owed to its employees.

The No Fault Act provides that "[b]enefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury under this chapter."  Mich. Comp. Laws § 500.3109(1).  Amtrak maintains that the disbursements made on behalf of its injured employees were not pursuant to FELA, as there never was a finding of liability under the statute to obligate Amtrak to make those payments.  However, while Amtrak's liability under FELA may not have been adjudicated, Amtrak expressly asserts in its pleading that it paid these medical expenses and lost wages due to its possible exposure under FELA.  (Am. Compl. ¶¶ 18, 24, ECF No. 22 at Pg ID 92-93.)  But even if these payments are not subject to deduction under section 500.3109(1) of the No Fault Act, Amtrak does not show that it has a statutory cause of action against Old Republic for recovery of PIP benefits allegedly owed to Amtrak's employees.

In *Covenant Medical Center, Inc. v. State Farm Automobile Insurance Company*, 895 N.W.2d 490 (Mich. 2017), the Michigan Supreme Court addressed whether a healthcare provider may assert a direct cause of action against a no-fault insurer to recover no-fault benefits and concluded that no statutory cause of action exists.  *Id*. at 504-05.  The Court found nothing in the statute conferring a right or

19

entitlement on any person other than the injured person (or his or her dependents upon the person's death) to sue a no-fault insurer.[7] *See id*. at 501. The Michigan legislature responded to *Covenant* by amending the No Fault Act to confer a statutory cause of action on health care providers. *See* Mich. Comp. Law 500.3112. However, the amendment did not extend a statutory cause of action to anyone but "[a] health care provider listed in section 3157" of the statute. *Id*.

## V.    Conclusion

For the reasons stated, the Court concludes that Amtrak's claims against the League for benefits under the No Fault Act are not time-barred. Nor are Amtrak's damages limited to those incurred a year before it added the League as a Defendant. The Court declines to grant summary judgment to the League at this time on the issue of whether the Village snowplows were involved in the subject accident. Amtrak first should be allowed the opportunity to conduct discovery on this issue.

Old Republic is not entitled to summary judgment with respect to Amtrak's claimed property protection insurance benefits. Absent an assignment, however, the Court concludes that the No Fault Act does not confer a statutory cause of

---

[7] The Michigan Supreme Court noted that its decision "is not intended to alter an insured's ability to assign his or her right to past or presently due benefits …." *Covenant Med. Ctr.*, 895 N.W.2d at 505 n.40. Amtrak offers no evidence of an assignment here, however.

action on Amtrak to sue Old Republic for PIP benefits owed to Amtrak's employees.

Accordingly,

**IT IS ORDERED** that Defendant Michigan Municipal League Liability & Property Pool's Motion to Dismiss and/or for Summary Judgment (ECF No. 39) is **DENIED**;

**IT IS FURTHER ORDERED** that Defendant Old Republic Insurance Company's Motion for Partial Summary Judgment is **GRANTED IN PART AND DENIED IN PART** in that Counts II and III, to the extent Amtrak is seeking PIP benefits from Old Republic are **DISMISSED**.

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: October 21, 2021

21